IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JEANNA STACKS AND WILLIAM YANCEY | § § | MDL NO. 2543 |
| *Plaintiff*, | § § | 1:14-MD-2543-JMF |
| v. | § § | HON. JESSE M. FURMAN |
| GENERAL MOTORS, LLC, | § § | C.A. NO. _____ |
| *Defendant.* | § § | COMPLAINT |
| | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COME NOW Plaintiffs, Jeanna Stacks and William Yancey (hereinafter the "Named Plaintiffs" or "Plaintiffs"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.      The Named Plaintiffs' cause of action is brought solely against GENERAL MOTORS, LLC ("New GM").  The Named Plaintiffs do not assert any causes of action against General Motors Corporation ("Old GM").

2.      Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same.  Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage.  New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG). Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, the Plaintiffs have claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injuries and/or property damage and New GM is, therefore, liable to the Named Plaintiffs.

**PARTIES**

3.     Plaintiffs Jeanna Stacks and William Yancey, are, and were at all times relevant hereto, residents of Coldwater, Mississippi.

4.     Plaintiffs assert claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on August 18, 2013, involving Plaintiffs' 2003 Saturn Ion (VIN 1G8AZ52F33Z109538).

5.     The Named Plaintiffs' personal injury claim involves a Defective Vehicle, specifically a 2003 Saturn Ion. Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009. Pursuant to the Agreement and other orders of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level management, officers, and directors. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

6.      Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

7.      New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

8.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

9.      At all times relevant to the claims in this lawsuit, Old GM and New GM were in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiffs' state of citizenship.  New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States.  New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

10.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiffs and New GM are citizens of different states.

**FACTUAL BACKGROUND**

<u>**General Background**</u>

11.    Plaintiff Jeanna Stacks was the driver of a 2003 Saturn Ion (1G8AZ52F33Z109538), in which Plaintiff William Yancey, was a passenger.  On August 18, 2013, Plaintiff Stacks was driving on Walhill Road in Tate County, Mississippi, when she lost control of the vehicle, the brakes locked up and she was unable to steer, the car left the roadway, rolled over and struck a tree, causing Stacks and her passenger, Yancey, to be injured.  The accident resulted in frontal damage to the vehicle and the passenger airbag failed to deploy.  Clearly, there was a defect in the ignition switch which affected the airbags since the passenger airbag failed to deploy.  This vehicle was subject to Recalls 14V047000,  14V171000; and 14E021000 related to the ignition switch.

12.    An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

13.    Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision.  In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle.  Moreover,

a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

14.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with a defective ignition switch which affected the airbag systems and passenger restraint systems in General Motors brand vehicles.

15.    In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

16.    On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

17.    On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins, and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

18.     Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

19.     The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

20.     The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all

warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related.  49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c).  Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles.  49 C.F.R. §577.5(a), §577.7(a).  Violating these notification requirements can result in a maximum civil penalty of $15,000,000.  49 U.S.C. §30165(a)(1).

21.    Defendant New GM used several processes to identify safety issues, including the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and Problem Resolution Tracking System ("PRTS").  The TREAD database, used to store the data required for the NHTSA early warning reports, was the principal database used by Old and New GM to track incidents related to Old and New GM vehicles.  The database included information from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external surveys; (iv) field reports from employees who bought Old and New GM vehicles and from Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database maintained by the Old and New GM legal staff to track data concerning complaints filed in court.  A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to identify spikes in the number of accidents or complaints related to various Old and New GM vehicles.  The PRTS is a database that tracks engineering problems identified in testing, manufacturing, through warranty data and through customer feedback.  The PRTS process involves five steps:  identification of the issue, identification of the root cause, identification of a solution, implementation of the solution, and feedback.

22.    Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they

were in fact required to do so.  This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

23.    In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiffs allege that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability.  With respect to Plaintiffs' independent claims, Plaintiffs do not seek to hold Defendant New GM liable for the actions of Old GM.  Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

24.    Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

25.    New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiffs' vehicle, including the following:

- After Crash airbags did not deploy  (10/16/2007)

- My daughter (17 years old) had an accident four days ago. She hit a tree - head on going somewhere around 40 mph. Neither air bag deployed. Emergency personnel - again - were in a state of shock and awe. This is our fourth (4th) GM vehicle involved in a "total loss" accident where the air bags did not deploy. (07/09/2005)

- I crashed into the side of another car head-on in my Saturn in (2003). The front of my car was completely destroyed up to the windshield, yet the airbags did not activate. It was crushed so bad that the insurance co. Totalled my car, yet with a wreck so bad the airbags did not activate?? (11/06/2004)

- After rear ending another vehicle at 45 mph front air bags did not deploy. Consumer sustained minor injuries. Dealership was notified, but did not resolve the problem. (03/15/2004)

- I was the driver of a 2003 Saturn Ion 2 involved in a front end collision with a parked vehicle, and the airbags did not deploy. We did have seat belts on. The approximate speed was 30-35 mph. None of the injuries to the occupants were serious. (11/19/203)

- The vehicle was involved in a collision and the airbags did not deploy. The vehicle was totaled. Dealer notified. (07/02/2003)

- Driving on staight on the highway hit a bump in the road my car started spinning out of control steering wheel locked up which made my driver side crash into a cement wall, my airbags did not deploy even thought the car hit the wall so hard that it cracked my radiator, my car then shut off then turned back (08/07/2016)

- The contact owned a 2003 Saturn Ion. While driving 40 mph, the brake pedal was depressed, but the vehicle failed to respond. The brake failure caused the contact's vehicle to crash into the rear of another vehicle. The air bags failed to deploy. The driver sustained injuries to the knees, which did not require medical attention. A police report was filed. The vehicle was destroyed. The manufacturer was notified of the failure. The contact felt that the crash was related to NHTSA campaign number: 14V047000 (air bags, electrical system). The approximate failure mileage was 130,000. (02/28/2014)

- The contact owns a 2003 Saturn Ion. The contact stated that while driving approximately 30 mph, the engine stalled and the vehicle crashed into a curb. The airbags did not deploy however, the contact was not injured. The vehicle was not able to restart. The vehicle was not diagnosed or repaired. The manufacturer was notified of the failure. The approximate failure mileage was 120,000. Updated 10/2/14 the consumer stated the driver received an injury to the head. The vehicle has not been fully repaired.  (10/09/2013)

- Couple months ago I brought my can to GM because of the ignition switch recall. Last week I got a call from GM that my car was done and ready to be pick up. I noticed that the power of my car wasn't there, the passenger window was going down (when I dropped it off at GM it wouldn't go down), and my car charger wasn't working (when I dropped it off it the car was charging my phone same charger same phone). 2:00am today I hit a deer on my way to my parents house (im okay but don't know about the deer) but the air bags didn't deploy. (07/14/2014)

- Was driving on wet road approaching an intersection. Before entering the intersection the light turned green and traffic started moving. I slowed down to let the tuck in front of me pick up speed. As I approached a black pickup backed into traffic causing multiple cars to stop in front of me. I pushed on my breaks but could not stop causing me to strike the truck in front O me with the front of my car. Upon impact my air bag did not deploy and my head struck the steering wheel. I recently

received the ignition recall notice, but the letter said parts were not available. (08/07/2014)

- In early January my mother was involved in a serious car accident while driving a 2003 Saturn iron. "I had no control over the car and it all happened so fast" my mother said. She hit a telephone pool then proceeded to roll down over a small hill and flipped, coming to a rest on a concrete divider. When responders arrived her ignition was off and the air bags did not deploy. She was hanging upside down for almost an hour until they were able to cut her out of the car. I have contacted GM and they confirmed that her car is part of the recent ignition switch recall. Please take the recall serious, it could save your L life, and others! (01/04/2014)

- The contact owns a 2003 Saturn Ion. The contact stated that while driving an unknown speed, she crashed into the rear of another vehicle and the air bags failed to deploy. The crash was so severe that the entire front end of the vehicle was destroyed. A police report was not filed and there were no injuries. The contact was also involved in a second crash in which the air bags failed to deploy. The vehicle was taken to an independent mechanic for repairs and the manufacturer was not made aware of the failure. The vehicle was repaired. The approximate failure mileage was 90,000. The current mileage was 132,000. (03/05/2010)

- The contact owns a 2003 Saturn Ion. The contact stated that while driving approximately 30 mph, the steering wheel became inoperable. The contact lost control of the vehicle and the vehicle flipped upside down. The air bags failed to deploy. The vehicle was destroyed. The contact sustained injuries to the head and left leg, and a police report was filed of the incident. The vehicle was towed to a salvage yard. The manufacturer was not made aware of the failure. The approximate failure mileage was 136,000. (09/09/2013)

- I was in a head-on collision in my 2003 Saturn Ion and the air bags did not deploy. The front of my car is crunched in and I have pictures of the accident. Luckily, I was able to walk away from the accident unharmed, but if I hit the other car any harder I would have been seriously hurt! I called the Saturn dealers here in syracuse and they did not seem very concerned at all with the idea of checking the safety devise that controls the air bags! what can be done? (10/16/2008)

- The air bags of the consumer's 2003 Saturn Ion 3 did not inflate during accident. (02/17/2005)

- I purchased the car on 9/9/03, I was involved in an accident on 9/11/03 I rear ended a pickup truck. The damages to my car totaled $8400 and it was a dead-center hit to the front of my car bending both of the front frames and my airbags did not deploy. Because there were no injuries sustained in the accident and because the accident was more then 50% my fault my lawyer has advised me that there are no

10

legal ramifications that I need to take. What I would like to do is insure that the word is out there for consumers to be aware that this is potentially a serious problem and it should be addressed. I will be contacting the Saturn dealership to insure they are aware of this problem. (09/15/2003)

- I was in an headon collision in my 2003 Saturn Ion quad coupe (purchased 6/3/03) and the airbags did not deploy. I was traveling at 60mph (the highway speed limit is 65) when I hydroplanned off the highway from the center lane into the median guardrail. (12/11/2003)

- While driving the vehicle at 100 mph, the driver lost control of the vehicle and hit a concrete wall head on. The owner stated that neither the frontal nor side impact air bags deployed upon impact. The driver sustained severe injuries as a result. The owner has made contact with the dealership. (12/22/2003)

- While driving at 30 mph vehicle was involved in a head on collision. Upon impact, air bags did not deploy. (09/26/2003)

26.    New GM received customer complaints of driver and passenger airbag failures in front end collisions.  GM issued three recalls regarding the ignition switch one year after this accident (14V047000; 14V171000; and 14E021000).

27.    Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's Chevrolet website stated:

**OUR COMMITMENT**

"Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

28.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about things like reliability, durability and, of course, safety. That's where we started when developing

our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

29.    Plaintiffs' 2003 Saturn Ion  was equipped with driver and front passenger frontal airbags.  However, the front passenger airbags did not deploy during the subject collision even though there was a frontal impact.  Plaintiffs were severely injured as a result of the collision.

30.    Plaintiffs' injuries were also caused by the failure of the passenger airbag to deploy in this collision.

31.    The defects in the design, manufacture and/or assembly of the 2003 Saturn Ion's safety components and the negligence of GM as described herein, resulted in the passenger frontal airbag not being deployed.

32.    Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the "Ion", which contained design defects when it left the possession of Old GM.

33.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

34.    Notwithstanding this duty, GM carelessly, recklessly and negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

35.    GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

36.    All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag

system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

37.    Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the 2003 Saturn Ion, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

38.    GM breached its duties owed to Plaintiffs in that it failed to recall and retrofit Plaintiffs' 2003 Saturn Ion.

39.    Plaintiffs were not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

**CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFFS UNDER MISSISSIPPI LAW**

**COUNT 1 – Negligence**

40.    The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

41.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability

for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, certain Named Plaintiffs have claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiffs.

42.    Old GM and New GM owed Named Plaintiffs a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiffs.

43.    Old GM and New GM owed the Named Plaintiffs a duty to detect known safety defects in GM vehicles.

44.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

45.    Old GM and New GM owed the Named Plaintifsf a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

15

46.     Old GM and New GM knew that their customers, such as the Named Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

47.     Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiffs and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiffs and other drivers to take the reasonable measures listed above.

48.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liability of Old GM assumed by New GM.

49.     Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiffs by failing to provide appropriate notice of and repair procedures for the Named Plaintiffs' Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

50.     It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiffs and other drivers would be endangered.

51.     The Named Plaintiffs' injuries were reasonably foreseeable to Old GM and New GM.

52.    The Named Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

53.    Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

54.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

### COUNT II - Strict Liability (MS Code § 11-1-63 (2013))

55.    The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

56.    Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

57.    The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

58.    The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiffs.

59.    The defects set forth herein caused the Named Plaintiffs' injuries.

60.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiffs have claims for crashes involving Old GM vehicles that

caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiffs.

61.    These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A.  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

62.    These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiffs.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiffs because these product liabilities were assumed by New GM.

63.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liabilities of Old GM assumed by New GM.  Independent of any failures

by Old GM as described herein, New GM breached its duties owed to the Named Plaintiffs as described herein.

64.    Plaintiffs would show in the alternative that there was a manufacturing defect in Plaintiffs' vehicle concerning the airbag system/passenger restraint system.

65.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Marketing Defect**

66.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiffs have claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiffs for Old GM's negligence. New GM is also liable to Plaintiffs for its independent, post- Sale negligence.

67.    Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiffs' vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiffs, the public, and NHTSA.

68.     In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

69.     Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing duty to warn Plaintiffs of the existence of the defect, including after the original sale of the vehicle.

70.     New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiffs, the public, and NHTSA about safety- related defects in Old GM vehicles.   This duty is based on the direct and continuing  relationship between New GM and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiffs, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiffs, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

71.     In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

72.     Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiffs by failing to provide appropriate notice of and repair

procedures for the Airbag System/Passenger Restraint System defects in Plaintiffs' vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

73.    Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiffs, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicles for safety-related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

74.    New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct.  New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

75.    The Named Plaintiffs pray for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

76.    As a direct and proximate result of New GM's wrongful conduct, Plaintiffs have been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and

medication costs; and (k) property damage to his vehicle sustained in the crash. All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court. All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

77.     All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court. All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

78.     Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

79.     The Named Plaintiffs request a trial by jury.

**PRAYER**

80.     For the foregoing reasons, the Named Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiffs against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiffs may be entitled at law or in equity.

Dated: July 12, 2018

RESPECTFULLY SUBMITTED,

/s/ *Mitchell A. Toups*
Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP

2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

***Attorneys for Plaintiffs***